TRINA A. HIGGINS, United States Attorney (#7349)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC #475353)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | Case No. |
|---|---|
| Plaintiff, | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY AND PLEA AGREEMENT |
| vs. | |
| GRANT WALKER, | Judge |
| Defendant. | |

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

1. As part of this agreement with the United States of America ("United States"), I intend to plead guilty to Count I of the Felony Information. My attorney has explained the nature of the charge against me, and I have had an opportunity to discuss the nature of the charge with my attorney. I understand the charge and what the United States is required to prove in order to convict me.

The elements of Count I, Aiding and Assisting in Filing False Tax Returns, in violation of 26 U.S.C. § 7206(2) are:

      (a) I aided, assisted, procured, counseled, or advised the preparation of a tax return;

      (b) The tax return was fraudulent or false as to a material matter; and

      (c) I acted willfully.

2. I know that the maximum possible penalty provided by law for Count I of the Felony Information, a violation of 26 U.S.C. § 7206(2), is a term of imprisonment of 3 years, a fine of $250,000, and a term of supervised release of 3 years. I understand that if I violate a term or condition of supervised release, I can be returned to prison for the length of time provided in 18 U.S.C. § 3583(e)(3).

    a. Additionally, I know the Court is required to impose an assessment in the amount of $100 for each offense of conviction, pursuant to 18 U.S.C. § 3013. Furthermore, restitution to the United States may be ordered pursuant to 18 U.S.C. § 3663.

    b. I understand that, if I am not a United States citizen, I may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

3. I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 3553(a), and that the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence. I have discussed these procedures with my attorney. I also know that the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs.

4. I know that I can be represented by an attorney at every stage of the proceeding, and I know that if I cannot afford an attorney, one will be appointed to represent me.

5. I know that I have a right to plead "Not Guilty" or maintain my earlier plea of "Not Guilty" and can have a trial on the charges against me.

6. I know that I have a right to a trial by jury, and I know that if I stand trial by a jury:

    a. I have a right to the assistance of counsel at every stage of the proceeding.

    b. I have a right to see and observe the witnesses who testify against me.

    c. My attorney can cross-examine all witnesses who testify against me.

    d. I can call witnesses to testify at trial, and I can obtain subpoenas to require the attendance and testimony of those witnesses. If I cannot afford to pay for the appearance of a witness and mileage fees, the United States will pay them.

    e. I cannot be forced to incriminate myself, and I do not have to testify at any trial.

   f. If I do not want to testify, the jury will be told that no inference adverse to me may be drawn from my election not to testify.

   g. The United States must prove each and every element of the offense charged against me beyond a reasonable doubt.

   h. It requires a unanimous verdict of a jury to convict me.

   i. If I were to be convicted, I could appeal, and if I could not afford to appeal, the United States would pay the costs of the appeal, including the services of appointed counsel.

  7. If I plead guilty, I will not have a trial of any kind.

  8. I know that 18 U.S.C. § 3742(a) sets forth the circumstances under which I may appeal my sentence. However, fully understanding my right to appeal my sentence, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily and expressly waive my right to appeal as set forth in paragraph 12 below.

  9. I know that 18 U.S.C. § 3742(b) sets forth the circumstances under which the United States may appeal my sentence.

  10. I know that under a plea of guilty the judge may ask me questions under oath about the offense. The questions, if asked on the record and in the presence of counsel, must be answered truthfully and, if I give false answers, I can be prosecuted for perjury.

  11. I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

  In March 2020, I was hired as an intern to work at an accounting business located in Provo, Utah (hereinafter, "BUSINESS A"). Prior to working at BUSINESS A, my accounting experience was limited to taking one accounting-related college class. I was initially paid $10/hour to work at BUSINESS A, and my primary responsibilities were assisting with organizing and submitting paper filings of tax returns. A large percentage of clients of BUSINESS A were single-member LLCs.

  In or around late March 2020, as part of my responsibilities at BUSINESS A, I researched the newly enacted Coronavirus Aid, Relief, and Economic Security Act (CARES Act), and learned about the employee retention tax credit (Employee Retention Credit or "ERC"). I also researched the Families First Coronavirus Response Act (FFCRA), and learned about paid sick and family leave wages that may be available to employees for COVID-related leave.

I acknowledge the following facts relating to the CARES Act, FFCRA, and ERC:

- The ERC is a refundable tax credit against certain employment taxes equal to 50% of the qualified wages an eligible employer pays to employees after March 12, 2020, and through December 2020. For 2021, the ERC is a refundable tax credit against certain employment taxes equal to 70% of the qualified wages an eligible employer pays to employees after December 31, 2020 and through September 2021; and

- For purposes of the ERC, an eligible employer is a business with operations that have been partially or fully suspended due to governmental orders due to COVID-19, or a business that has a 50% decline in gross receipts as compared to the same quarter in 2019; and

- For each employee, wages (including certain health plan costs) up to $10,000 can be counted to determine the amount of the ERC per calendar quarter. The ERC is capped at $5,000 per employee retained between March 13, 2020 and December 31, 2020, and up to $7,000 per employee per quarter retained between January 1, 2021 and September 30, 2021; and

- The Families First Coronavirus Response Act (FFCRA) requires certain employers to provide employees with paid sick leave (sick leave) of up to 80 hours and expanded family and medical leave (family leave) of up to 10 weeks for specified reasons related to COVID-19. FFCRA provides refundable tax credits that reimburse employers for the cost of providing paid sick and family leave wages to employees for leave related to COVID-19; and

- Self-employed individuals are not eligible for the ERC or sick and family leave credits under the FFCRA; and

- Form 7200 (Advance Payment of Employer Credits Due to COVID-19) was a newly created tax form used by employers to request an advance payment of the COVID-related tax credits. The Form 941 (Employer's Quarterly Federal Tax Return) may also be used to claim the COVID-related tax credits. The COVID-related tax credits may be greater than the tax owed by the employer, resulting in a refund to the employer.

In or around early April 2020, I participated in several meetings with the two founders of BUSINESS A to discuss my understanding of the ERC and related paid sick and family wages for COVID-related leave. Both founders expressed to me that the ERC and related paid sick and family wages (collectively, the "COVID-related tax credits") could be valuable for current and future clients of BUSINESS A.

It was decided by the founders of BUSINESS A that BUSINESS A should actively solicit single member LLCs to apply for the COVID-related tax credits, including the ERC and sick and family leave wages. It was decided by the founders that BUSINESS A should actively solicit Form 1099 workers (i.e., independent contractors) to convert their businesses into single member LLCs, taxed as an S Corporation. It was advertised that a benefit of this type of LLC is to allow the LLC to qualify for COVID-related tax credits, including the ERC and sick and family leave wage credits.

The founders advised me and other employees at BUSINESS A that it was their position that every business was impacted by COVID and, therefore, that every business should qualify for the COVID-related tax benefits. The founders further advised me that the spouse of married owners of single member LLCs should be claimed as an employee of the business, and that sick and/or family leave should be claimed when the owner of the single member LLC had children. The founders discussed, in my presence, that it would be difficult for the IRS to prove whether or not a spouse was actually employed by the business. I understood that, by claiming the spouse as an employee, the amount of ERC available to the client business would increase. I also understood that claiming sick and/or family leave would greatly increase the amount of COVID-related tax credits available to the client business. BUSINESS A charged a higher fee to a client seeking to hire BUSINESS A to prepare and file for COVID-related tax credits if the client was married and/or had children. The founders of BUSINESS A determined how much would be charged to clients for preparing and filing COVID-related tax credits.

In or around April 2020, the founders of BUSINESS A named me the manager of BUSINESS A's newly created COVID Department. I remained in this role until approximately June or July 2020, at which time I provided support to the COVID Department and responded to inquiries from the manager(s) of that department as needed.

While acting as the manager of BUSINESS A's COVID Department, I actively solicited current and potential clients of BUSINESS A to hire BUSINESS A to prepare and submit tax returns for COVID-related tax credits. The Form 7200 and/or Form 941 was used to claim the COVID-related tax credits for the client. In addition, I was directed by the founders to file Forms 7200 and/or Forms 941 claiming COVID-related tax credits for the founders, their family members, and their friends.

It was my practice to ask the client the following questions to gather information to prepare the Forms 7200 and/or 941 seeking COVID-related tax credits: (1) whether they had applied for other COVID programs or unemployment; (2) marital status; (3) whether they had children; and (4) estimated revenue in the business for the year. I explained to other employees of BUSINESS A what information to gather from clients, and how to prepare the Forms 7200 and 941.

In preparing the Forms 7200 and 941 to claim the ERC, I routinely claimed the maximum allowable ERC per employee. If the client was married, I routinely added the

5

spouse as a second employee of the company. I did not routinely obtain any information from the client as to whether the spouse actually worked for the company or was actually paid a wage. Rather, qualifying wages paid to each employee were determined by me, based on what the client stated his/her estimated future income to the LLC would be in the year. If the client had children, I routinely added family medical leave wages to the claim. I did not routinely obtain any information from the client as to whether family leave wages were actually paid, or whether there was qualifying event that would allow the business to claim the family leave wages. If the business was established prior to 2020, I would add sick leave wages based on a calculation I created. I did not routinely obtain any information from the client as to whether sick leave wages were actually paid, or whether there was a qualifying event that would allow the business to claim the sick leave wages.

To assist BUSINESS A in preparing and submitting claims for COVID-related tax credits, I created prefilled Forms with identical numbers for each client. The Forms varied based on whether the client was single, married, or had children. An employee of BUSINESS A would fill the client's identifying information into the prefilled form applicable to the client's marital and dependent status, and the Form contained prefilled numbers for the amount of COVID-related tax credit BUSINESS A would request on behalf of the client. I was asked to create these prefilled out forms as I would be traveling in the summer soliciting new clients for Business A.

At the direction of one of the founders of BUSINESS A, I routinely signed for clients on the Forms 7200 that BUSINESS A filed with the IRS. I did not obtain permission from clients to sign their names, and did not routinely send to clients a copy of the draft Form 7200 to ensure accuracy of information before filing it with the IRS.

Beginning in or around April 2020 and continuing through fall 2020, I spoke with T.F. and K.F., a married couple, about filing for the ERC and other COVID-related tax credits. T.F. is the owner of T.J.E. LLC, a single-member LLC which was an existing client of BUSINESS A. I prepared a total of nine (9) Forms 7200 that were filed by BUSINESS A with the IRS on behalf of T.J.E. LLC, during the time period April 24, 2020 through June 29, 2020. BUSINESS A also filed a Form 941 with the IRS on behalf of T.J.E. LLC on or about July 21, 2020 which repeated the claims for tax credits sought in the Forms 7200, but slightly reduced the amount of total credits for sick and family leave. The Forms 7200 collectively requested a total of $10,000 in ERC for two employees, as well as $3620 in credits for paid sick leave, and $7102 in credits for paid family leave wages. The Form 941 repeated the claim of $10,000 in ERC, and claimed $3568 in credits for paid sick leave, and $6000 in credits for family leave.

I acknowledge that the claim of 2 employees on the Forms 7200 and 941 was false. T.F. was the only employee of T.J.E. LLC; K.F. was not employed by T.J.E. LLC at any time, and there was no legitimate second employee of T.J.E. LLC during the filing.

I further acknowledge that no income was received by T.J.E. LLC during the filing period of April 2020 – July 2020, and no wages were paid by T.J.E. LLC to any employee during the filing period. I acknowledge that no sick leave or family leave wages were paid by T.J.E. LLC to any employee during the filing period. I acknowledge that after T.F. submitted payment information to Business A for services, I signed T.F.'s name, without his consent or authorization, to the Forms 7200 that were filed with the IRS. I acted willfully, and with the specific intent to inflate the amount of tax credits (and resulting refund) to T.J.E. LLC, when I falsely listed the number of employees, wages paid, and sick and family leave wages in the Forms 7200, and when I signed T.F.'s names to the forms.

I resigned from BUSINESS A in or around February 2021.

I acknowledge that, beginning in April 2020 and continuing through August 2021, BUSINESS A submitted hundreds of Forms 7200 and 941 to the IRS, claiming in excess of $11,000,000 in ERC and sick and family leave wage credits for clients of BUSINESS A. I further acknowledge that, for the time period I was employed by BUSINESS A (March 2020 through February 2021), BUSINESS A submitted hundreds of Forms 7200 and 941 to the IRS, claiming ERC and sick and family leave wage credits for clients totaling greater than $3,500,000 and not more than $9,500,000.

In total, I received approximately $50,000 from BUSINESS A for my work with the COVID Department and for commissions I was paid by BUSINESS A for the preparation and filing of COVID-related tax credits with the IRS.

12. The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

    a. **Guilty Plea.** I will plead guilty to Count I of the Felony Information.

    b. **Further Prosecution.** The United States agrees not to seek indictment against me for any other criminal charges arising from the scheme I participated in with Business A, as described in the Felony Information.

    c. **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against me, will not be pleaded to by me, or both. I understand and agree that the Court may take these facts into consideration in sentencing.

    d. **Acceptance of Responsibility.** The United States agrees to recommend that my offense level under the U.S. Sentencing Guidelines be decreased by two levels for acceptance of responsibility pursuant to Sentencing Guideline § 3E1.1(a) if, in the opinion of the United States, I clearly demonstrate acceptance of responsibility for my offense, up to and including at the time of sentencing, as set forth in § 3E1.1 of the

Sentencing Guidelines. In addition, the United States agrees to move for an additional one-level reduction in the offense level, in accordance with Sentencing Guideline § 3E1.1(b), if I qualify for a two-level reduction under § 3E1.1(a) and the offense level is 16 or greater prior to receiving the two-level reduction.

e. **Appeal Waiver.**

(1) Fully understanding my limited right to appeal my sentence, as explained above in paragraph 8, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me, and the manner in which the sentence is determined, on any of the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever, except I do not waive my right to appeal (1) a sentence above the maximum penalty provided in the statute of conviction as set forth in paragraph 2 above; and (2) a sentence above the high-end of the guideline range as determined by the district court at sentencing, or, in the event that no such determination is made by the district court, a sentence above the high-end of the guideline range as set forth in the final presentence report. I also knowingly, voluntarily, and expressly waive any argument (1) that the statute(s) to which I am pleading guilty is/are unconstitutional or (2) that my admitted conduct does not fall within the scope of the statute(s).

(2) I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, and the manner in which the sentence is determined, and my conviction, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel. This waiver includes any motion for modification of my sentence under 18 U.S.C. § 3582(c)(2).

(3) I understand that this waiver of my appeal and collateral review rights concerning my sentence shall not affect the United States' right to appeal my sentence pursuant to 18 U.S.C. § 3742(b). However, I understand that the United States agrees that if it appeals my sentence, I am released from my waiver.

(4) I further understand and agree that the word "sentence" appearing throughout this waiver provision is being used broadly and applies to all aspects of the Court's sentencing authority, including, but not limited to: (1) sentencing determinations; (2) the imposition of imprisonment, fines, supervised release, probation, and any specific terms and conditions thereof; and (3) any orders of restitution.

(5) Additionally, I waive all rights to appeal any issues regarding my right to presence and the validity of my remote appearance for this and any other hearings held in this matter.

   f. **Rule 410 Waiver.** If the Court finds that I failed to fulfill my obligations under this plea agreement, or if I withdraw my plea of guilty, I agree that this agreement, my statements pursuant to this agreement, or any leads derived therefrom, shall be admissible at any trial, hearing, or other proceeding.

   g. **Presentence Report and Financial Information.** I agree to provide truthful and complete information, including financial information, as requested by the probation office for the preparation of my presentence report and for determination of the conditions of my supervised release. I also consent to allowing the United States Attorney's Office to run a credit check on me. I consent to being placed on the Treasury Offset Program and State Finder.

   h. **Restitution.**

    (1) I understand that the United States will request and that the Court may order that I pay restitution. Under 18 U.S.C. § 3663(a)(3), I agree to pay restitution, in the amount of $50,000, to the United States at the time sentencing. I agree to pay this specific restitution, joint and several with any codefendants, and agree that this amount should not be reduced or increased through apportionment of liability under 18 U.S.C. § 3664(h).

    (2) I understand that the amount of restitution and the schedule of payments will be determined as a part of the sentencing proceedings in accordance with the provisions of 18 U.S.C. § 3664. I agree to pay all restitution as ordered by the Court. I agree that the payment and enforcement of my restitution order is governed by 18 U.S.C. § 3664, and my lawyer has explained the consequences of an order of restitution.

    (3) I understand and agree that payment of any restitution owed, pursuant to the schedule set by the Court at sentencing, should be a condition of any term of probation or supervised release imposed upon me. I know that if I fail to pay restitution as ordered, the failure can be considered a violation of probation or supervised release and, pursuant to 18 U.S.C. § 3614, the Court can resentence me to any sentence which might originally have been imposed in my case.

  13. I understand and agree that this plea agreement is solely between me and the United States Attorney for the District of Utah and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

  14. I understand that I have a right to ask the Court any questions I wish to ask concerning my rights about these proceedings and the plea.

* * * *

I make the following representations to the Court:

1. I am 26 years of age. My education consists of a high school education. I can read and understand English.

2. This Statement in Advance contains all terms of the agreements between me and the United States; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms. I understand the United States and I cannot have terms of this plea agreement that are not disclosed to the Court.

3. No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.

4. Neither my attorney nor the United States has promised me that I would receive probation or any other form of leniency because of my plea.

5. I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.

6. I am satisfied with my lawyer.

7. My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea. I was not under the influence of any drugs, medication, or intoxicants when I made the decision to enter the plea, and I am not now under the influence of any drugs, medication, or intoxicants.

8. I have no mental reservations concerning the plea.

9. I understand and agree to all of the above. I know that I am free to change or delete anything contained in this statement. I do not wish to make changes to this agreement because I agree with the terms and all of the statements are correct.

DATED this __16th__ day of ____May____, 2022.

_____
Grant Walker
Defendant

10

I certify that I have discussed this plea agreement with the defendant, that I have fully explained his rights to him, and that I have assisted him in completing this written agreement. I believe that he is knowingly and voluntarily entering the plea with full knowledge of his legal rights and that there is a factual basis for the plea.

DATED this 16th day of May, 2022.

Jason Silver
Attorney for Defendant

I represent that all terms of the plea agreement between the defendant and the United States have been, or will be at the plea hearing, disclosed to the Court, and there are no undisclosed agreements between the defendant and the United States.

DATED this 11th day of May, 2022.

TRINA A. HIGGINS
United States Attorney

/s/ Jennifer K. Muyskens
Jennifer K. Muyskens
Assistant United States Attorney

11